1

```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF TEXAS
 2                         HOUSTON DIVISION

 3    UNITED STATES OF AMERICA      ()        CRIMINAL ACTION
                                    ()        NO. H-09-259
 4    VS.                           ()        HOUSTON, TEXAS
                                    ()        MAY 14, 2010
 5    TIM BRINK                     ()        11:40 A.M.

 6
                      TRANSCRIPT OF REARRAIGNMENT
 7           BEFORE THE HONORABLE EWING WERLEIN, JR.

 8

 9    APPEARANCES:

10
      FOR THE GOVERNMENT:        Mr. Jim McAlister
11                               Assistant United States Attorney
                                 910 Travis, Suite 1500
12                               Houston, Texas  77002

13

14    FOR THE DEFENDANT:         Mr. Van G. Hilley
                                 Goldstein, Goldstein & Hilley
15                               310 S. St. Mary's St., Suite 2900
                                 San Antonio, Texas  78205
16

17

18    COURT REPORTER:           Anita G. Manley
                                Official Court Reporter
19                              515 Rusk, Rm. 8016
                                Houston, Texas  77002
20

21

22

23

24    Proceedings recorded by stenographic means, transcript produced
      by computer.
25
```

2

1                    P R O C E E D I N G S

2          THE COURT:  No. 09-259, United States versus Tim

3     Brink.  For the United States?

4          MR. MCALISTER:  Jim McAlister for the United States,

5     Your Honor.

6          THE COURT:  And for defendant?

7          MR. HILLEY:  Good morning, Your Honor.  Van Hilley for

8     the defendant, Tim Brink.  He's present.  We're ready to

9     proceed today, Your Honor, on the plea agreement rearraignment.

10         THE COURT:  All right.  Thank you.  I'll ask the

11    defendant be sworn, then, please.

12         THE CASE MANAGER:  Raise your right hand.

13      (Defendant sworn by the case manager.)

14         THE COURT:  You understand now that you're under oath

15    that if you answer any of my questions falsely, your answers

16    may later be used against you in another prosecution for

17    perjury or for making a false statement?

18         THE DEFENDANT:  Yes, I do, Your Honor.

19         THE COURT:  The purpose of this hearing is to

20    determine two things.  First, I need to determine if you're

21    mentally competent to participate in this hearing and

22    understand what is happening here today.  Second, I need to

23    determine whether there's an independent basis-in-fact to

24    support your plea of guilty to the offense charged against you

25    in Count 1 of the third superseding indictment.  It is very

1   important, therefore, that you understand my questions and

2   statements to you and anything that either of the lawyers may

3   say.  If at any time you do not understand what is being said

4   to you, will you ask that it be repeated or rephrased in such a

5   way that you clearly understand what is being said to you

6   before you give your response to me?

7           THE DEFENDANT:  Yes, Your Honor.

8           MR. HILLEY:  Your Honor, I believe you referred to it

9   as an indictment.  I believe it's an information, just to be

10  correct.

11          THE COURT:  All right.  Let me correct that, please.

12  This is the third superseding information.  All right.  Thank

13  you, Mr. Hilley, for that correction.

14              And your answer is still the same with respect to

15  what I've just asked you, Mr. Brink?

16          THE DEFENDANT:  Yes, it is, Your Honor.

17          THE COURT:  All right.  What is your full name?

18          THE DEFENDANT:  Timothy Lee Brink.

19          THE COURT:  And how old are you?

20          THE DEFENDANT:  46.

21          THE COURT:  How far did you go in school?

22          THE DEFENDANT:  Graduated college.

23          THE COURT:  Where was that?

24          THE DEFENDANT:  Troy State, Alabama.

25          THE COURT:  Have you ever been hospitalized for or

4

1   treated by a doctor for any type of mental or psychiatric

2   problems?

3           THE DEFENDANT:  No, I haven't, Your Honor.

4           THE COURT:  Has any doctor ever suggested that you

5   should receive that kind of treatment?

6           THE DEFENDANT:  No, Your Honor.

7           THE COURT:  Have you ever been treated for addiction

8   to drugs or to alcohol?

9           THE DEFENDANT:  No, Your Honor.

10          THE COURT:  Has any doctor ever suggested that you

11  should receive treatment for that kind of addiction?

12          THE DEFENDANT:  No, Your Honor.

13          THE COURT:  Have you taken any kind of medication,

14  pills, or narcotic drugs of any type within the last 48 hours?

15          THE DEFENDANT:  No, Your Honor.

16          THE COURT:  Have you consumed any alcoholic beverage

17  within the last 24 hours?

18          THE DEFENDANT:  No, sir.

19          THE COURT:  Are you well rested and of clear mind this

20  morning?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  Is there any reason that you can think of

23  why you are not mentally alert today and able to understand

24  what is happening here?

25          THE DEFENDANT:  No, sir.

1          THE COURT:  Have you been able to confer with your

2   lawyer again this morning before this hearing again?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Now, have you received a copy of the third

5   superseding information that is pending against you, that is,

6   the written charges filed against you in this case?

7          THE DEFENDANT:  Yes, I have, Your Honor.

8          THE COURT:  Have you read it?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Have you been over it with your lawyer?

11          THE DEFENDANT:  Yes, I have.

12          THE COURT:  Have you talked about the case in general

13   with your lawyer?

14          THE DEFENDANT:  Yes, I have.

15          THE COURT:  About how many times have you had

16   opportunities to talk with your lawyer about the case?

17          THE DEFENDANT:  Numerous times, Your Honor.

18          THE COURT:  And are you fully satisfied with the

19   counsel and representation and advice given to you by your

20   lawyer?

21          THE DEFENDANT:  Yes, I am.

22          THE COURT:  I've been provided a copy of a plea

23   agreement that your lawyer has negotiated with the Government

24   counsel, and I want to ask whether you've received a written

25   copy of this plea agreement?

1           THE DEFENDANT:  Yes, I have.

2           THE COURT:  Have you read it?

3           THE DEFENDANT:  Yes, I have.

4           THE COURT:  Have you been over it with your lawyer?

5           THE DEFENDANT:  Yes.

6           THE COURT:  Have you -- has your lawyer been able to

7    answer to your satisfaction all of your questions about the

8    content of this plea agreement, including its technical

9    provisions?

10           THE DEFENDANT:  Yes, he has, Your Honor.

11           THE COURT:  Is there anything that you want to ask me

12   about it?

13           THE DEFENDANT:  No, sir.

14           THE COURT:  In view of what you've told me, I won't go

15   over all of it, but I do want to call to your attention some of

16   its provisions.

17              The first numbered paragraph states that you

18   agree to plead guilty to Count 1 of the third superseding

19   information, which charges you with conspiracy to receive and

20   sell stolen products in violation of federal law.  You

21   understand what it is that you're proposing to plead guilty to?

22           THE DEFENDANT:  Yes, I do.

23           THE COURT:  And then back here on Page 3, there's a

24   section subtitled "Cooperation," stating that this agreement

25   carries the potential for a motion for departure under U.S.

7

1   Sentencing Guidelines Section 5K1.1.  You understand that that

2   is the potential where one cooperates with the Government in

3   providing information to help solve other crimes, help the

4   Government obtain other convictions and, if they deem it to be

5   substantial assistance to the Government, then the Government

6   may file a motion for leniency under the guideline

7   calculations.  You understand?

8           THE DEFENDANT:  Yes, I do, Your Honor.

9           THE COURT:  This -- the determination as to whether

10  you have provided that substantial assistance, however, is to

11  be determined solely -- see, that's in the third line of this

12  paragraph and it's in bold print and underlined -- by the

13  United States Attorney.  See that?

14          THE DEFENDANT:  Yes, I do, Your Honor.

15          THE COURT:  And then the next line, "sole judgment,

16  discretion of the United States."

17              What that means is you might think that you've

18  given them a lot of information, you've really helped them out

19  a great deal, and you should have this motion for leniency.

20  Your lawyer may think so, too, and I might even agree with you.

21  But it doesn't make any difference because if the Government in

22  its sole judgment doesn't believe that you get it, you don't

23  get it.  Do you understand?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Then, down here in -- you've read all

1  about what the requirements of "fully cooperate" mean, too,

2  that's set forth in that section?

3          THE DEFENDANT:  Yes, I have, Your Honor.

4          THE COURT:  All right.  Then there's a section on

5  waiver of appeal.  And here, it points out that you have a

6  right to appeal the sentence imposed except as to an upward

7  departure.  That's a reference to the advisory guidelines, that

8  is, a sentence that would be above what the guidelines would

9  recommend, as to that you would be able to make an -- take an

10  appeal.  But, otherwise, it says you're giving up your right to

11  appeal to a higher court any sentence that I impose.  You

12  understand?

13          THE DEFENDANT:  Yes, I do, Your Honor.

14          THE COURT:  This also states that you give up your

15  right to contest your conviction to any post-conviction

16  proceeding, this "collateral attack" that's referred to in the

17  next sentence.  Have you heard of a petition for habeas corpus

18  or writ of habeas corpus?

19          THE DEFENDANT:  I'm not familiar with that term.

20          THE COURT:  Well, it's that kind thing.  Let me

21  explain it a little further under this Section 2255.  Sometimes

22  when one has been convicted and sentenced to prison and the

23  case is all over and final, the prisoner in prison decides to

24  file a new case to bring a challenge about the proceedings that

25  resulted in his being incarcerated.

1          Sometimes he will say, for example, his lawyer

2     didn't effectively represent him or something like that, he's

3     been deprived of some Constitutional right or right under the

4     law, and asks to be released from prison.  What this says is

5     you're not going to file any kind of petition like that.  You

6     understand?

7               THE DEFENDANT:  I do now, Your Honor, yes.

8               THE COURT:  And is that your agreement?

9               THE DEFENDANT:  Yes.

10              THE COURT:  And then, back here on Page 5, the United

11    States makes certain agreements not to file further charges

12    against you related to the sale or receipt of petroleum from

13    2006 to May, 2010.  They say that they'll -- that you will

14    receive a one-level departure for timeliness of the plea.  All

15    the Government can do on that is file a motion.  The judge has

16    to decide whether to grant that or not.  You understand?

17              THE DEFENDANT:  I understand that, Your Honor.

18              THE COURT:  Then under 12.d., it says they'll

19    recommend sentencing at the low end of the guideline range.

20    And in the next sentence, they also say that they'll have a

21    certain recommendation as to what the relevant conduct ought to

22    be, the amount of profit received by the company in 2009 rather

23    than the gross volume receipt.

24              Those items are left to the determination of the

25    Court and the Government may make recommendations that a

1    guideline -- that a sentence be imposed at the low end.  Or,

2    for example, in one sentencing this morning -- I don't know if

3    you had arrived or not -- but it was a recommendation that they

4    be sentenced within the guidelines, and the sentence the Court

5    imposed was a variance and it went above the guidelines,

6    because the guidelines are advisory.  And I don't always follow

7    the recommendations of the Government.

8              So, on these questions about relevant conduct,

9    oftentimes I've seen the Government say, Well, we'll agree that

10   relevant conduct will just be this for so-and-so, and when I

11   get the report and find out what the facts are, I find that

12   that's not supported.  The judge has to make a determination

13   from a preponderance of the evidence as to what really is the

14   amount -- really is what the relevant conduct, what amount of

15   loss and intended loss should be taken into account.  You

16   understand?

17             THE DEFENDANT:  Yes, I do, Your Honor.

18             THE COURT:  So, the fact that the Government is saying

19   these things doesn't mean that you have a right to count on

20   them because that may or may not happen.  You understand?

21             THE DEFENDANT:  Yes, I do, Your Honor.

22             THE COURT:  Then back here on Page 8, there's a

23   factual basis for the guilty plea set out.  It takes up all

24   that page and spills over into the next page.  Have you read

25   all of that?

1          THE DEFENDANT:  Yes, I have, Your Honor.

2          THE COURT:  Are those facts true?

3          THE DEFENDANT:  Yes, they are.

4          THE COURT:  Well, I haven't been over all of this, but

5     are there any other parts of this plea agreement that you would

6     want me to explain to you?

7          THE DEFENDANT:  No, Your Honor.

8          THE COURT:  Is there any part of my explanation that

9     requires further clarification?

10         THE DEFENDANT:  No.

11         MR. HILLEY:  Your Honor, we have the actual signed

12    plea agreement by the Government, by the defendant, and by

13    myself, and we can tender it to the clerk at this time.

14         THE COURT:  All right.  Fine.  Thank you.  Subject to

15    we won't file it yet until we get through this process, and

16    then that may be done.  Thank you.

17              Let me ask, Mr. Brink, do you believe you have

18    any other agreement with the Government except what is set

19    forth in this written plea agreement?

20         THE DEFENDANT:  No, Your Honor.

21         THE COURT:  And has anybody else made any kind of

22    promise to you or assurance of any kind in order to persuade

23    you or induce you to plead guilty in this case?

24         THE DEFENDANT:  No, they have not.

25         THE COURT:  Has the Government or anybody else coerced

1    you or threatened you or in any way attempted to force you to

2    plead guilty in this case?

3              THE DEFENDANT:  No, they have not.

4              THE COURT:  You understand that the offense to which

5    you're proposing to plead guilty is a felony offense and that

6    if your plea is accepted, you will be adjudged guilty of that

7    offense and that such adjudication may deprive you of valuable

8    civil rights, such as the right to vote, the right to serve on

9    a jury, the right to hold public office, the right to possess

10   any kind of firearms, and, if you're not a citizen of the

11   United States, could adversely affect your immigration status

12   in the United States.  You understand that those are all

13   probable consequences of pleading guilty?

14             THE DEFENDANT:  Yes, I do, Your Honor.

15             THE COURT:  Have you talked with your lawyer about

16   what the maximum possible penalty is for the offense charged

17   against you in Count 1 of the third superseding information?

18             THE DEFENDANT:  Yes, I have, Your Honor.

19             THE COURT:  Let me go over this with you also.  This

20   charges you with conspiracy to receive stolen goods.  This

21   offense carries with it a term of not more than 5 years

22   imprisonment, a fine not to exceed $250,000, a term of not more

23   than 3 years of supervised release, and a special assessment of

24   $100.  Has all of that been explained to you?

25             THE DEFENDANT:  Yes, it has, Your Honor.

1            THE COURT:  When I talk about supervised release, I'm

2      talking about the condition of supervision for one who leaves

3      prison.  There's certain conditions imposed that one not commit

4      another federal, state or local crime, that one not possess any

5      kind of illegal controlled substance and other conditions; and

6      if any those conditions is broken, then, upon hearing, a judge

7      may set aside your release and order you back to prison for up

8      to two more years in prison just for having broken the term of

9      supervised release.  You understand?

10            THE DEFENDANT:  Yes, Your Honor.

11            THE COURT:  So you understand, then, what the possible

12     consequences of your plea of guilty could be in terms of what

13     the maximum possible sentence could be?

14            THE DEFENDANT:  Yes, I do.

15            THE COURT:  And also you understand that in the

16     federal system, there is no parole.  So, if you're sentenced to

17     a time in prison, you have to serve that time and cannot get

18     out early on parole?

19            THE DEFENDANT:  Yes, I do.

20            THE COURT:  Now, have you talked with your lawyer

21     about the United States Sentencing Guidelines that judges

22     consult in imposing sentences?

23            THE DEFENDANT:  Yes, I have.

24            THE COURT:  You understand, then, that the guidelines

25     are not mandatory, they're advisory; and, therefore, the judge

1   may impose a sentence that is more severe or that is less

2   severe than what is called for by the guidelines.  You

3   understand?

4           THE DEFENDANT:  Yes, I do, Your Honor.

5           THE COURT:  You also understand that under some

6   circumstances, you or the Government would have the right to

7   appeal the sentence to a higher court except to the extent

8   you've waived and given up that right in the written plea

9   agreement we went over.  You understand?

10          THE DEFENDANT:  I don't know what those circumstances

11  would be, but I do understand that.

12          THE COURT:  Well, it would be -- it would be, for

13  example, if a sentence were imposed above the maximum of the

14  guideline range, is what was carved out, as I understand it,

15  and, therefore, if the sentence that was greater than what the

16  guidelines would indicate as the top recommended sentence, then

17  you could appeal that.  But, otherwise, you're giving that

18  right up.

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  Okay.  Now, if the Government does make a

21  recommendation for leniency, or a recommendation that would

22  lead to leniency, such as some of these things that were set

23  forth in the plea agreement, and the Court does not follow that

24  recommendation, you understand that you still have to stand by

25  your plea agreement and you cannot withdraw your plea of

1   guilty?

2           THE DEFENDANT:  Yes, I do, Your Honor.

3           THE COURT:  You have a right to plead not guilty,

4   however, and to persist in that plea.  And if you did so, then

5   you would have the right to a trial by jury, during which you

6   would also have the right to counsel, to the assistance of

7   counsel for your defense, the right to see and hear all of the

8   witnesses and have them cross-examined in your own defense, the

9   right on your own part to decline to testify unless you

10  voluntarily elected to do so, and the right to the issuance of

11  subpoenas or compulsory process to compel the attendance of

12  witnesses to come to court and testify in your defense.  You

13  understand that under our system you would have all of those

14  rights if you pled not guilty?

15          THE DEFENDANT:  Yes, I do, Your Honor.

16          THE COURT:  But by entering a plea of guilty, if I

17  accept your plea, then there will be no trial and you will have

18  waived and given up your right to a trial, as well as all of

19  those other rights associated with a trial that I just

20  described to you?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  Now, let me explain to you the essential

23  elements of the offense of which you've been charged.  Count 1

24  of the third superseding indictment charges conspiracy to

25  receive and sell stolen goods, in violation of 18 United States

1   Code, Section 371 and 2315.

2            Let me explain to you what, first, the elements
3   are of the underlying offense, that offense of receipt and sale
4   of stolen goods which you allegedly conspired to commit.  Those
5   elements would be for that crime:  One, that the property was
6   stolen or unlawfully converted; two, the property -- such
7   stolen property had crossed the state or United States boundary
8   after being stolen or unlawfully converted; three, that the
9   defendant received, concealed, sold, or disposed of items of
10  the stolen property; and, four, that the defendant knew the
11  property was stolen or unlawfully converted at the time the
12  defendant received, concealed, sold, or disposed of it; and,
13  five, that such items had a value of $5,000 or more.  That's
14  the crime of receiving and selling stolen goods.

15           You're charged with conspiracy to commit that
16  crime.  In order to convict you of conspiracy, the Government
17  would have to prove beyond a reasonable doubt:  One, that two
18  or more persons made an agreement to commit the crime of
19  receiving, possessing, or selling stolen goods as charged in
20  the third superseding information; two, that you knew the
21  unlawful purpose of the agreement and joined in it willfully,
22  that is, with intent to further its unlawful purpose; and,
23  three, that one of the conspirators during the existence of the
24  conspiracy knowingly committed at least one of the overt acts
25  described in the third superseding information in order to

1   accomplish some object or purpose of the conspiracy.

2              Do you understand that those are the elements of

3   the offense charged against you in Count 1 of the third

4   superseding information?

5         THE DEFENDANT:  Yes, I do.

6         THE COURT:  Now, I'm going to ask what facts the

7   Government is prepared to prove if you choose to plead not

8   guilty.  I want you to listen to what he has to say, and then

9   I'm going to ask you about these things while you're still

10  under oath.

11             Very well, Mr. McAlister.

12        MR. MCALISTER:  Your Honor, the Government and the

13  defense have had some interchange over these facts.  The

14  specific facts I'm about to put in the record are verbatim in

15  the plea agreement and signed by the defendant, and I will read

16  those facts into the record.

17             In 2007, the Government of Mexico provided U.S.

18  Immigration and Customs Enforcement with information alleging

19  numerous companies and individuals were involved in the

20  smuggling of stolen petroleum products such as natural gas

21  condensate from Mexico into the United States.

22             An ICE investigation into the claim by Mexico

23  revealed that PEMEX, P-E-M-E-X, or authorized PEMEX companies

24  were the only legal owners and exporters of condensate into the

25  United States from Mexico.  A further investigation by ICE

1  revealed that Mr. Brink, the president of Continental Fuels,

2  was not associated with PEMEX.

3           The investigation determined that various

4  companies imported Mexican condensate stolen from PEMEX into

5  the United States.  The stolen condensate was sold by the

6  import companies to U.S. companies such as Continental Fuels

7  and Trammo, T-R-A-M-M-O, Petroleum in the United States, who

8  then sold the condensate to larger companies.  The import

9  companies sent semi-truck tankers loaded with stolen condensate

10 from Mexico into the United States via land border port of

11 entry.  The import companies directed the tanker trucks to

12 deliver the condensate to Continental Fuels, located inside the

13 Port of Brownsville, Texas.  The import companies were paid by

14 wire transfer to various accounts.

15          Under the arrangement in 2009, Continental Fuels

16 and R&G Trading paid the importers of the stolen Mexican

17 condensate.  Continental Fuels then stored the product for

18 Murphy Oil until there was a sufficient quantity of condensate

19 to load on a barge and deliver to the end user on behalf of

20 Murphy Oil.  This was done with the knowledge of Mr. Brink.

21          On or about February 7th of 2009, Mr. Don

22 Schroeder, the president of Trammo Petroleum, was responsible

23 for the loading of a barge containing stolen condensate in

24 Brownsville, Texas.  This transaction was conducted with the

25 knowledge of Mr. Brink.

1          Mr. Schroeder was responsible for the sale and

2     barging of about $2 million in stolen condensate in 2009,

3     though the profits received by Continental Fuels, with the

4     knowledge of Mr. Brink, were only about 120,000 to 200,000.

5          Continental Fuels, with the knowledge of Mr.

6     Brink, was responsible for the storing of stolen condensate

7     imported from Mexico by other parties in 2009, which is

8     outlined as follows:

9          Based on the business records and banking records

10    of Continental Fuels and R&G Trading and on testimony, it was

11    determined that Y Oil and Gas delivered stolen condensate to

12    Continental Fuels.  As an example, Y Oil and Gas delivered ten

13    tanker trucks of stolen condensate on or about January 26th,

14    six tanker trucks of stolen condensate on or about February

15    27th of '09, and six tanker trucks or about March 3rd of 2009.

16    Continental Fuels and R&G Trading paid Y Oil and Gas by wire

17    transfer to bank accounts in exchange for the stolen

18    condensate.

19          The United States can show that Mr. Brink had

20    knowledge that the condensate transactions described above

21    involved stolen condensate from Mexico through a series of

22    recorded conversations in 2008 and 2009, in which arrangements

23    for the sale and transport were discussed.

24          As an example, the defendant participated in a

25    conversation with Josh Crescenzi, C-R-E-S-C-E-N-Z-I, on

1   February 12, 2009, in which he states that even though the

2   price may drop to $25 a barrel, when you aren't paying anything

3   for it, you are still making $25 a barrel.  It was discussed

4   that everyone should be satisfied with making a little money.

5   Mr. Brink later reiterated that the suppliers were paying

6   nothing for the product and that they should be happy with less

7   than they are asking.

8           THE COURT:  All right.  We've heard what Mr. McAlister

9   said.  Are those facts true?

10          THE DEFENDANT:  Yes, they are, Your Honor.

11          THE COURT:  Tell me about how this scheme worked in

12   your own words.

13          THE DEFENDANT:  Okay.  The condensate was brought

14   across the border by companies, different -- various trucking

15   companies that -- I don't know who they were.  I never met with

16   them, but they were brought across the border through various

17   trucking companies.  And they had -- to my knowledge, the

18   governor of Mexico provided all the legal documents for them to

19   come across the border, Your Honor, and they came across with

20   the correct paperwork and then they delivered the product to

21   our terminal.

22          THE COURT:  How did you know it was stolen?

23          THE DEFENDANT:  My employee that worked for me, Josh

24   Crescenzi, was -- had told me on July of the previous year that

25   he had told somebody one of the deliveries, that it was -- that

1   he knew it was stolen product, and that was the only -- that

2   was the basis of me knowing it was stolen product.

3        THE COURT:  How would you -- what kind of price did

4   you pay for it, then?

5        THE DEFENDANT:  We paid regular price, Your Honor,

6   normal price for the product.  We didn't get a reduced price.

7        THE COURT:  And then what would you do with it?

8        THE DEFENDANT:  We would store it and sell it to

9   larger companies out of Brownsville by barge, like Trammo,

10  BASF, Shell, Valero, AGE Refinery.

11       THE COURT:  So, you were kind of the fence for the

12  stolen product, in the vernacular?

13       THE DEFENDANT:  We owned the facility, Your Honor.  We

14  stored the product there at the facility.  So, we were -- we

15  were the ones who stored the product.

16       THE COURT:  Is there any other advice I need to give

17  the defendant under Rule 11, Mr. Hilley?

18       MR. HILLEY:  None that I'm aware of, Your Honor.

19       THE COURT:  Do you know of any reason he would not be

20  competent to enter a knowing and voluntary plea or any reason

21  he should not enter a plea of guilty?

22       MR. HILLEY:  I do not have any knowledge that would

23  prevent that, Your Honor.

24       THE COURT:  Very well, then, Mr. Brink.  How do you

25  plead to the charge set forth against you in Count 1 of the

1   third superseding criminal information?

2          THE DEFENDANT:  Guilty.

3          THE COURT:  Now, the plea agreement has been signed,

4   so that will be accepted and filed.  Mr. Brink, it is the

5   finding of the Court, in the case of United States of America

6   versus Tim Brink, that defendant Brink is fully competent and

7   capable of entering an informed plea and that his plea of

8   guilty is a knowing and voluntary plea supported by an

9   independent basis-in-fact containing each of the essential

10  elements of the charged offense.  The defendant's plea of

11  guilty is, therefore, accepted and defendant Tim Brink is now

12  adjudged guilty of the offense charged against him in Count 1

13  of the third superseding information.

14          Now, a written presentence report will be

15  prepared for me to assist me in the sentencing process.  This

16  will be done by the probation office.  They will want to

17  interview you, and your lawyer may be present with you if you

18  wish for him to be so.  It is very important that you furnish

19  full and accurate information.  A failure to do so can be used

20  as a basis to increase the guidelines range.

21          You and your lawyer will also be permitted to

22  read the presentence report before the sentencing hearing, and

23  you and your lawyer will also have an opportunity to speak in

24  your behalf at the sentencing hearing.  The initial report is

25  due June 28th.  Objections, if any, or a statement that there

1  are none will be filed by July 12th.  The final report is

2  due -- I need a date for this final report.

3           It will be 14 days after that disclosure.  That

4  would be?

5           THE CASE MANAGER:  The 26th.

6           THE COURT:  July 26th, and the final report is due

7  on -- rather, sentencing is set for August 20, 2010, at 10:30

8  a.m.

9           Is there anything else in this matter this

10  morning, counsel?

11           MR. MCALISTER:  No, Your Honor.

12           THE COURT:  The defendant has been on bond until the

13  present time?

14           MR. MCALISTER:  Absolutely.  We ask that he remain on

15  bond under the same conditions, Your Honor.

16           THE COURT:  All right.  You understand, Mr. Brink, and

17  recall the conditions that were set for your bond when you were

18  placed on release?

19           THE DEFENDANT:  Yes, I do, Your Honor.

20           THE COURT:  I'm going to continue those in effect.

21  You need to comply with all of those conditions still, make all

22  appearances, including the sentencing hearing.  You understand?

23           THE DEFENDANT:  Yes, I do, Your Honor.

24           THE COURT:  Anything else?

25           MR. MCALISTER:  No, Your Honor.

24

1          THE COURT:  Is that all?

2          MR. HILLEY:  Nothing further, Your Honor.

3          THE COURT:  All right.  Thank you.  That concludes

4     this hearing, then.

5          (Concluding at 12:10 p.m.)

6

7     I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE
      RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER, TO THE BEST
8     OF MY ABILITY.

9                                        5/21/10

10    _____      _____
      ANITA G. MANLEY
      OFFICIAL COURT REPORTER

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25